182886 Victor Villa Serrano v. William P. Barr Good morning Mr. Elmore. Good afternoon Your Honors. May it please the court, counsel. My name is Christopher Elmore. I represent the petitioner Victor Martin Villa Serrano in this petition for a review of the final order of a reinstatement order. That is a final agency decision. Reinstatement of removal does require that there be a prior order of removable that is final that can be reinstated. First I will address the three jurisdictional bars that were raised in the briefs in clarifying that they do not apply here and do not bar this court from granting the relief we seek because there is no final order. Then I will clarify that there is no final prior removal order because removal proceedings never occurred pursuant to the statute and the immigration judge never had jurisdiction pursuant to the plain language of the statute and the regulations to enter an order in the first place. Mr. Elmore, just before you get to your two points, it's correct that the second appeal that you filed was from the BIA initial appeal from the immigration court. Correct. The second appeal is a motion to reopen that we filed with the board. Thank you. May continue. Three jurisdictional bars that have been raised and I'm sure you have questions about. One is under section 1231A5. That's the reinstatement statute. Now that statute bars review of an underlying order and it bars reopening of an underlying order. This court found in Lewajewski that the bar is a review of the merits of the underlying order. But under the statute, this court still needs to determine that there was in fact an underlying removal order that was final that can be reinstated. In that case, because you have to determine that there is a final order, you have to look at whether it was valid. Right. Now the case in Galindo, the Seventh Circuit, found that even though it was barred from jurisdictionally from reviewing the merits of an order, it could still correct a legal nullity where an order was injured ultraviarious by the Board of Immigration Appeals. Okay. In that case, the petitioner would have literally had no recourse to challenge an unlawful order of removal if we had not remanded to fix the error. And the petitioner had exhausted administrative remedies and had appealed in a timely manner. Why are those factors not distinguishing? None of that is present here. You are correct on the facts, Your Honor. I better be because I was on the panel. Well, I think those go to the other two jurisdictional bars here. Specifically, under 1252, that there must be a petition for review of a final order within 30 days and also that all administrative remedies be exhausted regarding a final order before they can petition for review in front of this court. It's our position that because there was never actually a final order removal, then they can't be held to find that they did not exhaust the available remedies below. Technically, the board might have been in a position to vacate a void order, but at the same time, there wasn't a void order. So therefore, the board wouldn't have jurisdiction. So we maintain that they're not required to exhaust to the board where there was no final order of removal. You know, if E.S. Zorano had not reentered the United States unlawfully, he would have filed a motion to reopen in the immigration court, right? Correct. Given that he had a lawful way to pursue the claim, why would we apply the holding in any event of Mejia-Galindo? Well, I still think it comes back to that because the proceedings were not valid in the first place, there is no final order of removal. And without the final order, he's not required to do a motion to reopen or go to the board in order to meet an exhaustion standard. Yeah, he could have applied with a motion to reopen, but I don't think he was required to do that in order to meet an exhaustion standard. And tell me, how is it that we could decide that an order of removal was void without reviewing it? Well, as I said, this court has held that it can't review the merits of an underlying order in the reinstatement context. However, I don't think you need to review any of the merits of the order or the proceedings. We're simply looking at the fact that all the way back at the beginning, the proceedings were never initiated in the first place. And once we recognize that the removal proceedings were never initiated by statute and jurisdiction never vested by the statute of regulations, then that removal order would be void. So, I mean, a final point on the jurisdictional bars under 1252. In 2005, a removal order involving what was based on a conviction for a controlled substance would be barred from review in front of this court under 1252A2C. A year later, Congress passed the Real ID Act and 1252A2D came into play, which would then allow the petitioner to have a petition before this court on a final order involving the controlled substance. But at the time that the order was issued, that was not the case, and this court did not have the authority to even hear it. Moving on to whether or not that there is a final order of removal in the first place. The definition of a final order is into the statute, which is an order that is issued by an immigration judge. And then further, the regulations under 8 CFR 1241.1 state that the final order is made at the conclusion of removal proceedings conducted under section 1229A. Now, no one, I don't think in this case, is debating whether or not a notice to appear is pertinent to vesting jurisdiction and initiating a case. However, I think the bigger question becomes, which notice to appear definition do they want to use? There's one in the statute and there's one in the regulations. I think everything clearly points to you have to use the definition in the statute. It would be absurd to come to the conclusion that there would be a notice to appear defined in the statute that starts up removal proceedings, and then there would be a separate document titled a notice to appear that's under the regulations with different requirements, also involved in starting up removal proceedings, but then actually are two separate documents. And having to figure out which one you would need to use at any given time, that makes it ambiguous. Additionally, the regulations have to support the statute, not supplant that. Given that the plain language of the regulations and the way the statute is set up, it's pretty clear that the notice to appear at issue is going to be the one defined under section 1229. I think the biggest thing, and I know that you'll be looking at the Bermuda's Cota, the Board of Immigration Appeals decision on this. I'm sure you'll reference the Hernandez Perez out of the Sixth Circuit and the Karen Giffey out of the Ninth on their recent decisions on this same matter. The problem with those decisions is they don't apply the plain language. First, they don't even look at whether proceedings were initiated. Initiation is strictly statutory. You need a notice to appear that must be served on the alien in order for the proceedings to be initiated. If it's not initiated, the starting line is not crossed, and we don't get to the end with a final order of removal because the judge never has the authority to issue the order. Second, they all come to the final holding conclusion that a jurisdiction vests under the regulations so long as a notice of hearing and a notice to appear are both filed with the court, meeting the requirements under 1229. If the regulatory notice to appear was sufficient, there would be no reason to include in the holding the reference to meeting the requirements of a 1229 definition of a notice to appear. You know, the government posed an interesting side effect, if you will, of the rule that you're suggesting. That is, if the notice to appear is invalid, then immigrants who've been granted release also have void orders. And, of course, thousands of orders granting or denying relief would be invalidated under your suggested rule. I mean, could that be what the Supreme Court intended in Pereira? I don't think that the Supreme Court intended to create a problem, necessarily, so much as give a specific analysis underlying that the statute is explicit and unambiguous. The problem that may be too big to fix was created by the government's, you know, negligent or willful failure to use a system that would have resolved this whole problem in supplying the time on the NTAs in the first place. So, I see I'm out of time here. Did you have one final thought? I think that no deference should be given to the lower court, the Bermudez Cota, simply because they didn't apply the plain language of the statute and do the correct analysis. Thank you very much. Okay. Here comes someone. Oh, no, no. You will be the judge. Okay. Good morning, Your Honors. Good morning. May it please the Court, Joseph O'Connell on behalf of the Attorney General. Your Honors, the Court should dismiss the petition for review for lack of jurisdiction. In the reinstatement context, the Court's jurisdiction is limited to the reinstatement itself, and it does not extend to reviewing the prior removal order. But there are two additional hurdles to reviewing the underlying order in this case. Not only is there the reinstatement bar, but there's also the petition for review is untimely as to that 2005 removal order. And Mr. Villa-Serrano did also not appeal that order to the Board. And so it's also barred because he didn't exhaust his administrative remedies. So in his opening brief, Mr. Villa-Serrano claims that the 2005 removal order has altered years, but that's just another way of advancing a legal challenge to that underlying removal order. And so in the reinstatement context, the Court looks to see if a removal order exists. It doesn't essentially accept challenges to the legality of that underlying removal order. So Mr. Villa-Serrano also relies pretty heavily on the Mejia case, which Your Honor noted. But again, that case is different because that was a timely petition for review from an underlying Board decision. So there's different statutory hurdles in this case. There's the reinstatement bar, there's the timeliness bar, and then there's also the exhaustion bar. So unless the Court has any questions about jurisdiction? I do. Okay. How do you respond to the argument that having two sets of requirements for notice-to-appear documents is going to create confusion? I'm referring to having one set of requirements for the purpose of the stop-time rule and another for the purpose of subject matter jurisdiction. So do I think it raises confusions? I don't necessarily think so. The Court's been doing that for three years. And again, this Court held in Dababna that the government can do this in two documents. And so 1229A is essentially a notice statute. So it doesn't discuss or examine how or when jurisdiction vests with the Immigration Court. And so again, the Ninth Circuit, I know they're not controlling, but the Ninth Circuit in Caranguife and the Sixth Circuit in Hernandez-Perez laid it out pretty clearly how PERA does not apply in all circumstances. So PERA dealt with the interplay between two statutes. And the statutes were the cancellation statute and the 1229A. And the cancellation statute explicitly referenced a notice-to-appear under 1229A. So 1229A is again the notice statute, but it does not address how or when jurisdiction vests with the Immigration Court. So because it's silent, the regulations apply. And so the regulations indicate that this can be done in two documents. It can be done with the initial notice-to-appear. And then when the time and date is not on that notice-to-appear, the Immigration Court can then issue this subsequent hearing notice that includes the time and date and all the relevant information, and that's when the jurisdiction vests. And that's what this Court held in Dababna. So again, I would argue that this Court shouldn't even get to that question because of the lack of jurisdiction in this case. There's these three jurisdictional bars. There's the reinstatement bar, the timelines bar, and the exhaustion bar. And so, again, this legal challenge to the underlying removal order is not, it shouldn't be before this Court. Again, Mr. Villa did not exhaust his administrative remedies. This is not a timely petition for review as the underlying removal order. And even if this Court gets to that Pereira issue, which it shouldn't, the Ninth Circuit and the Sixth Circuit have held, and it pretty clearly lays out why Pereira does not obviously invalidate all these three years of removal proceedings, especially, as Your Honor noted, for individuals who have been granted relief. And so if the Court wanted to include such a broad, massive holding in Pereira, it would have done so. So again, if the Court has any other questions, I'd be happy to rest on my brief. I know it's been a long day. Okay. Excuse me. You used your time, but if you want a minute. Do you? Sure, sure. I would just conclude that the debauvner was pre-Pereira ruling. You know, Pereira, whether or not you hold that it's retroactive or not, as far as whether it's binding, it was a plain language analysis that still applies here. Additionally, the confusion between whether to use the statutory or the regulatory, notice to appear that, again, the regulations have to support the statute. There can be no way that they can come in and then create something different that doesn't meet the requirements of the statute. And that's my closing. Thank you. Thank you very much. Thanks to both of you. Most of all, thanks for sitting through everything. The case will be taken under advice. And the Court will be in recess until tomorrow morning at 9.30. Thank you, everyone. Okay.